UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MARCELINO HUERTA, et al.,                            REPORT AND
                          Plaintiffs,                RECOMMENDATION
              - against
VICTORIA BAKERY, et al.,                             10-CV-4754 (RJD) (JO)
                          Defendants.
-------------------------------------------------------X

James Orenstein, Magistrate Judge:

        Plaintiffs Marcelino Huerta ("Huerta") and Antonio Gonzaga ("Gonzaga") have sued

defendants Victoria Bakery (the "Bakery") and Anthony Greco ("Greco") for their alleged failure

to pay the wages required under federal and state law. The defendants never responded, and the

plaintiffs therefore seek a default judgment. Upon a referral from the Honorable Raymond J.

Dearie, United States District Judge, I now make this report and, for the reasons that follow,

respectfully recommend that the court deny the motion because the plaintiffs have failed to

establish the defendants' liability on their federal claims, and that it instead dismiss the Complaint

*sua sponte* with leave to amend. I further recommend, however, that if plaintiffs timely file an

amended complaint that cures the pleading deficiencies I have identified, and if the defendants

again default in this action, then the court should enter judgment against the defendants jointly and

severally in the total amount of $43,956.59. That total consists of an award to Huerta of

$20,317.80 (including $6,483.57 in unpaid overtime wages; $1,103.04 in spread-of-hours

compensation; $6,483.57 in liquidated damages; $1,393.57 in prejudgment interest; and $4,854.05

in attorney's fees and costs) and an award to Gonzaga of $23,638.79 (including $7,668.97 in

unpaid overtime wages; $1,747.25 in spread-of-hours compensation, $7,668.97 in liquidated

damages; $1,699.55 in prejudgment interest; and $4,854.05 in attorney's fees and costs).

## I.  Background

The following recitation of facts is derived from the Complaint's uncontroverted factual allegations, which I deem to be true upon the defendants' default, as well as facts that the plaintiffs have established through competent and credible evidence during the inquest proceedings. The Bakery is a corporation that operates in Brooklyn, New York, and has an annual gross volume of sales in excess of $500,000. Docket Entry ("DE") 1 (Complaint) ¶¶ 13-14, 20. Greco owns the Bakery and supervises its operations and employees. *Id.* ¶¶ 15, 42-43. Huerta and Gonzaga were employed as bread makers at the Bakery for approximately one year through the summer of 2010. *Id.* ¶¶ 10-12. Huerta and Gonzaga worked seven days a week in shifts that frequently exceeded 10 hours in length. *Id.* ¶¶ 36, 39. They were not paid a premium for hours worked above 40 hours per week or for shifts over 10 hours in length. *Id.* ¶¶ 38, 40.

The plaintiffs' filed the Complaint on October 15, 2010. DE 1. They purported to assert wage claims not only for themselves, but on behalf of all similarly situated employees of the Bakery, as a collective action pursuant to the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201, *et seq.*, and as a class action asserting claims under the New York Labor Law ("NYLL"). Complaint ¶¶ 1-5. The plaintiffs served process on each defendant on October 20, 2010. DE 2; DE 3. The defendants never answered or otherwise responded to the complaint, and the Clerk has entered the default of each defendant on the docket. DE 8. On March 18, 2011, the plaintiffs filed the instant motion for a default judgment. DE 7. The plaintiffs served their initial motion papers on both the Bakery and Greco. DE 7-5. On July 5, 2011, the court referred the matter to me for a report and recommendation. DE 9.

I scheduled a status conference and instructed the plaintiffs to so notify the defendants. Order dated July 6, 2011. Despite that notice, that defendants did not appear at the conference on July 18, 2011. *See* DE 10. The plaintiffs informed me at the conference that they did not intend either to pursue default relief on behalf of a putative class or to seek to notify potential opt-in plaintiffs of their right to participate in a collective action. *Id.* I directed the plaintiffs to file any submissions they wished to have me consider in support of their motion for a default judgment by August 18, 2011, and I directed them to serve a copy of those materials on the defendants. *Id.*

On August 18, 2011, the plaintiffs filed a memorandum of law along with supporting exhibits, including declarations from each plaintiff. DE 11 (Motion and Exhibits); DE 12 (memorandum of law) ("Memo."). In his declaration, Huerta averred that the defendants employed him from approximately August 2009 until July 2010. DE 11, Ex. C ("Huerta Dec.") ¶ 2. He typically worked seven days a week, ten or twelve hours per shift, without breaks. *Id.* ¶¶ 4-7. From Monday to Wednesday, Huerta worked ten-hour shifts, starting at about 4:00 p.m. and ending at about 2:00 a.m. *Id.* ¶ 4. From Thursday to Sunday, he worked 12-hour shifts from approximately 3:00 p.m. to 3:00 a.m. *Id.* ¶ 5. He was paid a flat rate of $100 per day regardless of the number of hours he worked. *Id.* ¶ 9.

Gonzaga averred in his declaration that he was employed by the defendants from approximately November 2009 until July 2010. DE 11, Ex. D ("Gonzaga Dec.") ¶ 2. He worked seven days a week in shifts ranging from thirteen to sixteen hours, without breaks. *Id.* ¶¶ 4-7. From Monday to Friday, Gonzaga worked in shifts of 13 to 14 hours, beginning at about 4:00 p.m. and ending between 5:00 a.m. and 6:00 a.m. *Id.* ¶ 4. On Saturdays and Sundays, he worked 16-hour

shifts from approximately 4:00 p.m. to 8:00 a.m. *Id.* ¶ 5. Gonzaga was paid a flat rate of $110 per day regardless of the number of hours he worked. *Id.* ¶ 9.

On September 28, 2011, I scheduled a damages inquest, and, at my direction, the plaintiffs so notified the defendants. Order of September 28, 2011; DE 13 (Affidavit of Service). Both plaintiffs testified at the inquest on October 18, 2011; the defendants did not appear. *See* DE 18 (transcript) ("Tr."). Huerta testified that he worked at the Bakery from October 9, 2009, to sometime in September 2010. *Id.* at 5. He worked seven days a week in shifts of varying lengths: 12 hours each day from Sunday to Wednesday, and 13 or 14 hours on Fridays and Saturdays. *Id.* at 6, 10. Huerta only took one or two days off during the period that he worked for the defendants. *Id.* at 11.[1] Gonzaga testified that he was employed at the Bakery from November 2009 to July 2010. *Id.* at 10. He worked 13 hours a day from Monday to Thursday, and 15 hours a day from Friday to Sunday. *Id.* at 14, 17. He took approximately four days off for illness while employed at the Bakery. *Id.* at 18.

At the conclusion of the inquest, I granted the plaintiffs' request for leave to submit a revised calculation of damages to correct a computational error with respect to spread-of-hours damages. DE 15 (Minute Entry); Tr. at 19-20. I also directed counsel to file a revised fee application and invited her to address in a supplemental submission the issue of whether the factual allegations in the Complaint sufficiently establish that the plaintiffs or their employers were engaged in commerce or in the production of goods for commerce, as required to support a claim under the FLSA. DE 15; Tr. at 23-24; *see* 29 U.S.C. § 207(a).

---

[1] Huerta also testified that he was never paid for his final two weeks of work. *Id.* at 8. However, he requested no relief for unpaid regular wages in the Complaint, nor has he included these wages in his revised calculation of damages. Accordingly, I decline to recommend relief on this basis.

On November 4, 2011, the plaintiffs submitted a revised damages calculation and fee application. DE 17 ("Damages Calculation"). The plaintiffs also submitted a proposed Amended Complaint alleging additional facts related to the defendants' involvement in interstate commerce. DE 17-3 (the "PAC"). To date, the plaintiffs have not served the PAC on the defendants.

In their revised request for relief, the plaintiffs seek the following awards. Huerta seeks $8,575.00 in unpaid overtime wages; $8,575.00 in liquidated damages under the FLSA; $3,001.25 in unpaid spread-of-hours wages; and $1,047.38 in pre-judgment interest. Damages Calculation at 1. Gonzaga seeks $7,801.32 in unpaid overtime wages; $7,801.32 in liquidated damages; $1,985.79 in unpaid spread-of-hours wages; and $880.84 in pre-judgment interest. *Id*. The plaintiffs do not seek an award for liquidated damages under the NYLL, *see id.*, although they argue in their memorandum of law that they are entitled to such damages. *See* Memo. at 9-11. The plaintiffs jointly seek an award for costs and attorneys' fees in the amount of $19,531.17. Damages Calculation at 1. Thus, the plaintiffs seek an award in the total amount of $59,199.07. *Id*.

II.    Discussion

A.    Applicable Law

1.    Default

When a defendant defaults, the court must accept as true all well-pleaded allegations in the complaint, except those pertaining to the amount of damages. Fed. R. Civ. P. 8(b)(6); *see Finkel v. Romanowicz*, 577 F.3d 79, 83 n.6 (2d Cir. 2009) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). The fact that a complaint stands unanswered does not, however, suffice to establish liability on its claims: a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading. With respect to liability, a

defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action. *See, e.g., see Romanowicz*, 577 F.3d at 84; *Directv, Inc. v. Neznak*, 371 F. Supp. 2d 130, 132-33 (D. Conn. 2005) (denying default judgment on several claims based only on conclusory allegations which lacked a sufficient factual basis for a finding of liability); *see also Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971) (default-based liability is established by "well-pleaded allegations in a complaint"), *rev'd on other grounds*, 409 U.S. 363 (1973); *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 159 (complaint's assertion of proximate cause necessary for finding of liability must be "properly alleged"); *Levesque v. Kelly Commc'ns, Inc.*, 1993 WL 22113, at *5 (S.D.N.Y. Jan. 25, 1993) ("the Court must be satisfied initially that the allegations of the complaint are 'well-pleaded'") (citing *Hughes*, 449 F.2d at 63).

If the defaulted complaint suffices to establish liability, the court must conduct an inquiry sufficient to establish damages to a "reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (quoting *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). Detailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing. *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991); *Credit Lyonnais*, 183 F.3d at 155. When a defendant defaults in an action brought under the FLSA, the plaintiff's recollection and estimates of hours worked are presumed to be correct. *Chun Jie Yin v. Kim*, 2008 WL 906736, at *3 (E.D.N.Y. Apr. 1, 2008) (citing *Anderson v. Mt. Clemens Potter Co.*, 328 U.S. 680, 687-88 (1946); *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997)).

2.      Federal And State Wage Laws

The FLSA requires employers to pay their employees the statutory minimum wage as well as a premium (150 percent of the legally mandated minimum regular wage) for hours worked above 40 hours per week. 29 U.S.C. §§ 206(a), 207(a)(1). Further, an employer must "make, keep, and preserve" records of employee wages, hours, and employment conditions. 29 U.S.C. § 211(c). An employee bringing an action for unpaid overtime compensation under the FLSA has the burden of proving that he performed work for which he was not properly compensated. *S. New England Telecomms.*, 121 F.3d at 66-67 (citing *Mt. Clemens Potter Co.*, 328 U.S. at 687); *Rivera v. Ndola Pharmacy Corp.*, 497 F. Supp. 2d 381, 388 (E.D.N.Y. 2007) (citations omitted). If an employer fails to keep the required records, the plaintiff may meet this burden "'if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *S. New England Telecomms.*, 121 F.3d at 66-67 (quoting *Mt. Clemens Potter Co.*, 328 U.S. at 687). A plaintiff may do so solely through his or her own recollection. *Rivera*, 497 F. Supp. 2d at 388 (citing *Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005)).

The NYLL mirrors the FLSA in most but not all respects. New York similarly defines an employer as a "person employing any" employee, NYLL § 2(6), requires employers to pay their manual workers – that is, anyone who serves as "a mechanic, workingman, or laborer[,] *id*. § 190(4) – "weekly and not later than seven calendar days after the end of the week in which the wages are earned[,]" *id*. § 191(1)(a)(I), and mandates a similar premium for overtime compensation. N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2. Unlike the FLSA, however, New York law does not require the plaintiffs to show a nexus with interstate commerce or any minimum

amount of annual sales. In addition, the state statute has a longer limitations period: claims under the FLSA must be brought within two years of a violation, unless the violation was willful, in which case the period is extended to three years; state law claims may be asserted up to six years after the alleged violation. *See* 29 U.S.C. § 255(a); NYLL § 663(3).

B.    Liability

As a preliminary matter, I note that notwithstanding the fact that the plaintiffs have included the PAC in their post-inquest submissions, *see* DE 17, in determining whether the plaintiffs have established liability and may therefore be awarded a default judgment, the court may not consider the PAC but must instead look only to the pending original complaint. The plaintiffs have not served the PAC on the defendants, and apparently did not provide the defendants with a copy of the post-inquest submissions that includes the proposed new pleading. The defendants have thus received only the original Complaint, and may therefore have chosen to boycott these proceedings based on an understanding – which I believe to be correct, as explained below – that the latter pleading is defective. Accordingly, they should only be held liable if the pleading they failed to answer as required is one that establishes liability. Similarly, the defendants' default does no more than establish the truth of the well-pleaded facts alleged in the original Complaint; it does not establish any allegation made for the first time in the PAC. I therefore analyze the issue of liability below solely by reference to the original Complaint.

1.    Statute Of Limitations

The FLSA permits a plaintiff to recover wages within two years after the claim accrues, unless the plaintiff can demonstrate that the employer violated the act willfully, in which case the limitations period is extended to three years. *See* 29 U.S.C. § 255(a). The limitations period for

violations of the relevant state law is six years. *See* NYLL § 663(3). All of the plaintiffs' claims for unpaid wages accrued within the two-year period preceding the filing of the Complaint on December 15, 2010, and all of their claims are therefore timely.

### 2.   The Defendants' Status As Employers

The plaintiffs assert four causes of action against each defendant. In the first claim, they allege that the defendants failed to pay overtime wages in violation of the FLSA. Complaint ¶¶ 45-54. The third claim asserts a similar cause of action under the NYLL. *Id*. ¶¶ 69-76. Their second and fourth causes of action likewise assert claims exclusively under the NYLL, based on allegations that the defendants failed to pay all wages owed within seven days after the end of each work week and failed to pay spread-of-hours compensation for each day the plaintiffs worked over ten hours. *Id*. ¶¶ 55-68, 77-83. The defendants' default establishes as true the plaintiffs' allegations that they did not receive statutorily prescribed wages. Whether the defendants are legally responsible for paying such wages requires a more detailed discussion as to the proof that they were employers within the meaning of the applicable law.

The state and federal laws the plaintiffs invoke use similar standards to determine whether a party qualifies as a plaintiff's "employer." *See Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 189 (S.D.N.Y. 2003). I therefore rely on case law applying the FLSA to all of the plaintiffs' claims in considering whether the defendants can be deemed to have employed the plaintiffs within the meaning of applicable law.

Recognizing the FLSA's remedial purpose, courts in this jurisdiction have adopted an expansive view of the employment relationships the statute covers. *See Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984). "In determining whether an employment relationship exists

for purposes of the FLSA, courts evaluate the 'economic reality' of the relationship, looking beyond rigid corporate constructs to consider the functional realities facing employees." *Lin v. Great Rose Fashion, Inc.*, 2009 WL 1544749, at *12 (E.D.N.Y. June 3, 2009) (citing *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)). Because the FLSA's broad definition of "employer" offers "little guidance on whether a given individual is or is not an employer" the case law of this circuit holds that "the overarching concern is whether the alleged employer possessed the power to control the workers in question with an eye to the 'economic reality' presented by the facts of each case." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).

To determine whether a particular defendant served as an "employer" under the FLSA, the inquiry focuses on the degree to which the alleged employer exercised formal control over the employee. Courts consider several factors, including "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter*, 735 F.2d at 12 & n.1 (internal citations omitted) (recognizing the need for case-by-case analysis because "the statute's definitions are stated only in the broadest terms"). However, the economic reality test does not depend on these or any other isolated factors, as "any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition." *Herman*, 172 F.3d at 139 (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)).

The plaintiffs assert that they were employed by the Bakery and that they reported to and worked under the supervision of the Bakery's managerial employees, including Greco. Complaint ¶¶ 1, 35, 41-44. The plaintiffs further assert that Greco was an officer, president, owner and/or

shareholder of the Bakery; that Greco dominated the day-to-day operating decisions at the Bakery and had the power to hire and fire employees; and that Greco supervised and controlled employee work schedules, determined the rate and method of pay for employees, and generated and maintained employment records for the Bakery. Complaint ¶¶ 42-44. Such allegations suffice to establish that both the Bakery and Greco qualify as the plaintiffs' employer for purposes of the FLSA, and therefore to impose joint and several liability on both for their violations of the wage laws. *See Shim v. Millennium Group, LLC*, 2010 WL 409949, at *2 (E.D.N.Y. Jan. 27, 2010) (finding both individual defendants and corporation liable under FLSA where complaint contained allegations of actions taken collectively by the "Defendants"); *Moon v. Kwon*, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002) (holding that corporate officer who is considered an employer under the FLSA is jointly and severally liable along with corporation).

3.  Applicability Of The FLSA

To establish coverage under the FLSA, an employee must normally (other than in circumstances not present here) demonstrate either that he was personally "engaged in commerce or in the production of goods for commerce," or that his employer was "an enterprise engaged in commerce or in the production of goods for commerce[.]" 29 U.S.C. §§ 206(a), 207(a)(1); *see also Jacobs v. N.Y. Foundling Hosp.*, 483 F. Supp. 2d 251, 257-58 (E.D.N.Y. 2007) (discussing individual and enterprise coverage). Huerta and Gonzaga have failed to establish either basis for coverage under the FLSA.

First, the plaintiffs have not established that they were personally "engaged in commerce or in the production of goods for commerce" within the meaning of the statute. The FLSA defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). According

11

to the Department of Labor, individual employees are engaged in commerce "when they are performing work involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence)" between states. 29 C.F.R. § 779.103. For example, an employee could be engaged in commerce by regularly using the mail or the telephone between states, traveling across state lines, or regularly shipping goods across state lines. *See* 29 C.F.R. § 779.10; *Kaur v. Royal Arcadia Palace, Inc.*, 643 F. Supp. 2d 276, 292 (E.D.N.Y. 2007) (citing 29 C.F.R. § 779.103). The plaintiffs have made no such allegations. Indeed, the Complaint's only reference to the work they regularly performed at the Bakery is the allegation that they and their co-workers "perform work as bread makers, bakers, food handlers and other job functions related to [the Bakery's] commercial bakery operation." Complaint ¶ 20; *id.* ¶ 35 (same). Such allegations do not suffice to establish that the plaintiffs engaged in commerce or in the production of goods for commerce.

The plaintiffs have also failed to establish that the defendants are an enterprise engaged in commerce or in the production of goods for commerce. To plead enterprise coverage, the plaintiffs must allege that the employer has two or more employees regularly and recurrently engaged in commerce, or has two or more employees regularly and recurrently "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and that the employer's annual gross volume of sales is $500,000 or more. 29 U.S.C. § 203(s)(1)(A); 29 C.F.R. § 779.238. Although the plaintiffs have alleged that the Bakery's gross annual sales exceed $500,000, *see* Complaint ¶ 14, they have alleged no facts to satisfy the first element of enterprise coverage. Indeed, they do not even make a conclusory allegation (which would not suffice in any event) that the Bakery is an "enterprise engaged in commerce." The

Complaint's sole relevant allegation is the one recited above: that the employees "perform work as bread makers, bakers, food handlers and other job functions related to [the Bakery's] commercial bakery operation." Complaint ¶ 20; *id*. ¶ 35 (same). The Complaint does not allege, for example, that the Bakery ships its baked goods to customers out-of-state. Nor does it allege that the Bakery's employees regularly handle goods or materials that have moved in interstate commerce.

Some judges in this district have inferred FLSA coverage from the nature of the employer's business, notwithstanding similar pleading deficiencies. *See*, *e.g.*, *Maribel Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 118, 121 (E.D.N.Y. 2011) (Seybert, J., adopting analysis of Tomlinson, M.J.) (finding it was "logical to infer … that the cleaning supplies utilized by [janitors] originated outside of New York."); *Shim*, 2009 WL 211367 at *3 (E.D.N.Y. Jan. 29, 2009) (Block, J.) (presuming that employees handled goods or materials moved in interstate commerce because "it is simply inconceivable that none of the … custodial … supplies … originated outside of New York").

I respectfully recommend against drawing such an inference in the circumstances of this case. First, drawing such an inference is in tension with the principle that because defaults are "generally disfavored," any doubt about the propriety of finding default "should be resolved in favor of the defaulting party." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). More fundamentally, drawing such inferences in favor of a plaintiff who can and should make sufficient allegations to establish liability undermines the efficiency that Federal Rule of Civil Procedure 55 otherwise serves to promote. That rule not only provides a just and efficient remedy for a plaintiff confronted by a defendant's recalcitrance; it also allows a defendant to review a deficient complaint and make the rational decision to expend no resources in answering it. Finally, the

plaintiffs seek no such indulgence: after I noted the Complaint's deficiencies at the inquest and invited a response, *see* Tr. at 23-25, the plaintiffs did *not* challenge the proposition that their original pleading failed to state a claim. Instead, they attempted to address the deficiencies in the Complaint by submitting an amended pleading that strives to cure its predecessor's defects.

The PAC seeks to overcome the Complaint's failings by adding two allegations. First, the plaintiffs intend to allege that the "[d]efendants engage in interstate commerce, produce goods for interstate commerce, and/or handle sell, or work on goods or materials that have been moved in or produced for interstate commerce[.]" PAC ¶ 16. That, however, is precisely the sort of formulaic and conclusory allegation that the Supreme Court has made clear can not suffice to state a valid claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

Second, the plaintiffs now propose to allege that the "[d]efendants produce bakery goods and products that are delivered to supermarkets, delis, restaurants and grocery stores located in New York and New Jersey." PAC ¶ 17. That allegation suffices only to establish that the Bakery itself produces goods for use in interstate commerce. It does not establish that the Bakery has at least two employees whose regular duties include "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person[.]" 29 U.S.C. § 203(s)(1)(A); 29 C.F.R. § 779.238. If the plaintiffs were to supplement the PAC's allegation about the Bakery's products with some additional assertion about the number of employees involved in the production or transportation of such goods, they would sufficiently plead a claim to which the FLSA applies on the ground that the Bakery is an enterprise engaged in interstate commerce. Neither the PAC nor the pending Complaint, however, includes any such allegation.

Accordingly, there is no basis for the court to grant the plaintiffs' motion for a default judgment; to the contrary, because the Complaint fails to state a cause of action under the FLSA (as does the PAC), the court should instead *sua sponte* dismiss the Complaint's first cause of action, without prejudice to amendment. Moreover, dismissal of the Complaint's sole cause of action under federal law should also result in the dismissal without prejudice of the remaining claims under state law. The relevant statute provides that the court "may" decline to exercise such supplemental jurisdiction after dismissal of all claims over which it has original jurisdiction, 28 U.S.C. § 1367(c)(3), and applicable case law suggests that the court "should" do so where the dismissal occurs before trial. *Castellano v. Bd. of Trs.*, 937 F.2d 752, 758 (2d Cir. 1991) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

I therefore respectfully recommend that the court deny the motion for a default judgment without prejudice and instead dismiss the Complaint with leave to amend. Because I anticipate that the plaintiffs will likely overcome the pleading deficiencies described above, and also in recognition of the possibility that the court may reject the foregoing analysis, I proceed to discuss the relief the plaintiffs should receive upon a successful showing of the defendants' liability. If and when the plaintiffs file an amended complaint that suffices to state wage claims under state and federal law, I respectfully recommend that the court enter judgment awarding damages and other relief as set forth below.

C.    Relief

Huerta requests damages in the total amount of $21,198.63, and Gonzaga seeks a total of $18,469.27 (including, for each, unpaid overtime wages, liquidated damages, spread-of-hours compensation, and prejudgment interest). Damages Calculation at 1. They also jointly request

$19,531.17 in attorneys' fees and costs. *Id*. In support of their requests, the plaintiffs have submitted their respective declarations and oral testimony, as well as spreadsheets summarizing their damages calculations, and an itemized statement of their attorneys' work.

As a preliminary matter, when an employer fails to maintain accurate records or where, as here, no records have been produced as a consequence of a defendant's default, courts have held that the "plaintiff['s] recollection and estimates of hours worked are presumed to be correct." *Zeng Liu v. Jen Chu Fashion Corp.*, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004); *see also Mt. Clemens Potter Co.*, 328 U.S. at 687-88 (shifting the burden of proof); *Chao v. Vidtap*, 196 F. Supp. 2d 281, 293-94 (E.D.N.Y. 2002) (finding plaintiff's testimony to be sufficient to establish unpaid wages). In this case, however, the plaintiffs have provided information that is to some extent internally inconsistent, in that each plaintiff's oral testimony differed in some respects from his written declaration. The discrepancies relate to the number of hours each man worked at the Bakery and, with respect to Huerta alone, the period of his employment. These inconsistencies are generally minor, and they do not give me pause as to the plaintiffs' credibility. Nevertheless, I must resolve such inconsistencies in order to determine damages with reasonable certainty, and even a small error as to the number of hours per week that a plaintiff worked may have a significant impact on the ultimate calculation of damages in this case. Moreover, my observation of each plaintiff's demeanor while testifying at the inquest provides me with no basis for crediting one source of information over the other.

The burden of proving reasonably certain damages rests with the plaintiffs, *Credit Lyonnais*, 183 F.3d at 155, and it is unlikely that they will understate the damages to which they are entitled. Accordingly, where the plaintiffs assert inconsistent facts with respect to an element

of the damages calculation, I resolve such inconsistencies in the defendants' favor. Thus, for example, where a plaintiff has provided two different estimates of the number of hours he worked, I credit the lower number in calculating the damages to which he is entitled.

With respect to the number of hours worked, Huerta wrote in his declaration that he worked 10 hours per day from Monday to Wednesday, and 12 hours per day from Thursday to Sunday, for a total of 78 hours per week. Huerta Dec. ¶¶ 4-5. At the inquest, however, he testified to a more grueling schedule of from 87 to 90 hours per week: 12 hours each day from Sunday to Wednesday, and 13 or 14 hours on Thursdays, Fridays, and Saturdays. Tr. at 6, 10. Gonzaga wrote that he worked between 97 and 102 hours per week, or 13 to 14 hours per day from Monday to Friday and 16 hours on Saturdays and Sundays. Gonzaga Dec. ¶¶ 4-5. He testified at the inquest to a slightly easier schedule of 95 hours per week: 13 hours per day from Monday to Friday and 15 hours from Saturday to Sunday. Tr. at 14, 17. Taking the lower of each plaintiff's varying recollections, I conclude that Huerta worked 78 hours per week and Gonzaga worked 95 hours per week.[2] Likewise, I conclude that Huerta worked for more than ten hours in a day four times per week, and that Gonzaga did so seven times per week.

With respect to his period of employment, Gonzaga stated in both his declaration and at the hearing that he worked at the Bakery from November 2009 to July 2009. Gonzaga Dec. ¶ 2; Tr. at 10. His counsel calculates damages based on an employment period of 35 weeks from November 2, 2009 to July 4, 2010. *See* Damages Calculation at 5-6. That description of Gonzaga's employment period is consistent with the evidence and I therefore adopt it.

---

[2] The plaintiffs' counsel has submitted a calculation of damages that inexplicably assumes Huerta worked 80 hours per week. *See* Damages Calculation at 2-4. That figure is at odds with both Huerta's declaration and his testimony, and I therefore reject it. Counsel has correctly based her calculation of Gonzaga's damages upon a 95 hour work week. *See id.*

Huerta, in contrast, gave differing accounts of the period of his employment. He wrote in his declaration that he worked at the Bakery from August 2009 to July 2010, but at the inquest he described the period as running from October 9, 2009, to sometime in September 2010. Huerta Dec. ¶ 2; Tr. at 5. To further complicate matters, the damages calculation submitted by Huerta's attorney covers a period beginning in the last week of July 2009 and ending on July 4, 2010. *See* Damages Calculation at 2-4. Plainly, Huerta is not entitled to damages for work performed in July 2009, since he has never averred that he was employed by the defendants during this period. But beyond this, his conflicting statements regarding the start and end dates of his employment make it impossible to determine the precise period of his employment. All that can be said with "reasonable certainty," based upon Huerta's conflicting sworn statements, is that Huerta's employment with the defendants began no later than October 9, 2009, and ended no earlier than July 31, 2010. Since Huerta has requested damages only for work performed through July 4, 2010, I conclude that he is entitled to collect damages for the period from October 9, 2009, to July 4, 2010, which is 38 weeks and two days.

1. <u>Unpaid Overtime Wages</u>

Both federal and state law require that employers pay employees a 50 percent premium for their overtime hours – that is, the hours in excess of 40 that they worked in each work week. *See* 29 C.F.R. § 778.105; N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.4. For each week that Huerta and Gonzaga worked more than 40 hours, they are entitled to overtime wages. *See* 29 U.S.C. § 207(a)(1).

In calculating overtime pay owed under the FLSA, the court must first determine the employee's regular rate of pay for the relevant periods. *See* 29 U.S.C. § 207(a)(1). The regular rate

of pay is the hourly rate paid to the employee for a typical week. *See* 29 U.S.C. § 207(e); *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945). For employees earning a daily, rather than hourly, wage, that rate is calculated by dividing the employee's total weekly compensation by the number of hours actually worked. 29 C.F.R. § 778.112; *see Cesario v. BNI Constr., Inc.*, 2008 WL 5210209, at *2 (S.D.N.Y. Dec. 15, 2008); N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2. Huerta and Gonzaga assert that they were paid $100 and $110 per day, respectively, and that they worked seven days a week. Thus, for a typical work week, Huerta was paid a total of $700 in wages and Gonzaga was paid $770. As previously discussed, I credit Huerta and Gonzaga with having worked 78 and 95 hours per week, respectively. As a result, I conclude that Huerta's hourly wage was $8.97 ($700 per week divided by 78 hours per week), and that he was therefore entitled to a 50 percent overtime premium of $4.49 for each hour he worked after the first 40 hours of work each week in the covered period. With respect to Gonzaga, I conclude that his hourly wage was $8.11 ($770 per week divided by 95 hours per week) and that he is entitled to an overtime premium of $4.05 per hour.

Since I credit Huerta and Gonzaga with having worked 78 and 95 hours per week, I conclude that they are owed 38 and 55 hours of overtime wages per week, respectively. Multiplying these figures by the overtime rates above, I calculate that Huerta is owed $170.62 and Gonzaga $222.75 in overtime pay for each week worked. Multiplying these figures by the number of weeks that each plaintiff worked for the defendants yields a result of $6,532.31 for Huerta ($170.62 per week multiplied by 38 $^2/_7$ weeks) and $7,796.25 for Gonzaga ($222.75 per week multiplied by 35 weeks). To arrive at the final calculation of overtime wages owed, I subtract from these totals the overtime wages not owed to the plaintiffs as a result of their days off. At the

damages inquest Huerta testified that he took two days off and Gonzaga testified that he took four days off during the relevant periods. Tr. at 11, 18. For want of a more precise method, I calculate the plaintiffs' overtime wages for a single day of work by dividing the total overtime hours worked each week by the number of days the plaintiffs worked each week (seven), and multiplying the result by each plaintiffs' overtime rate. This calculation yields a result of $24.37 for Huerta and $31.82 for Gonzaga. Multiplying these figures by the number of days Huerta and Gonzaga took off during the covered period (two and four, respectively), yields a further result of $48.74 for Huerta and $127.28 for Gonzaga. Subtracting these figures from the totals above, I conclude that Huerta and Gonzaga would be entitled to overtime compensation in the amounts of $6,483.57 and $7,668.97, respectively.

2.     "Spread-Of-Hours" Damages

The NYLL's "spread-of-hours" provision entitles each plaintiff to one additional hour of pay at the minimum hourly wage for each day he worked over ten hours. NYLL § 650 *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.4.[3] As set forth above, I conclude that Huerta worked more than ten hours in a single day four times per week and that Gonzaga did so every day. The minimum hourly wage in New York at all relevant times was $7.25. Huerta and Gonzaga are therefore owed $29.00 (4 x $7.25) and $50.75 (7 x $7.25), respectively, for each week of work. Multiplying these figures by the number of weeks Huerta and Gonzaga worked for the defendants yields a result of $1,110.29 for Huerta ($29.00 per week multiplied by $38 \, {}^2/_7$ weeks) and $1,776.25 for Gonzaga ($50.75 per week multiplied by 35 weeks). To arrive at the final calculation of spread-of-hours wages owed, I subtract from these totals the spread-of-hours wages not owed to the plaintiffs as a result of their days off. Since every day that Gonzaga worked for the defendants

---

[3]  The plaintiffs incorrectly calculate their spread-of-hours damages based on their actual pay rates, rather than on the minimum wage. *See* Damages Calculation at 2-4, 5-7.

was more than 10 hours, I subtract four days of spread-of-hours damages, or $29.00, from his total for a result of $1,747.25. And, because somewhat less than half of the days Huerta worked were more than 10 hours, I subtract a single day's worth of spread-of-hours wages, or $7.25, from his total, yielding a result of $1,103.04. Accordingly, I conclude that Huerta and Gonzaga have proved spread-of-hours damages to a reasonable certainty in the amounts of $1,103.04 and $1,747.25, respectively.

### 3. Liquidated Damages

Both federal and state law provide for an additional award of liquidated damages to a plaintiff who establishes that his employer has failed to pay required wages. However, the relevant statutory provisions operate in different ways. Specifically, an employer who violates the federal overtime provision "shall be liable" to employees for unpaid overtime in "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).[4] In contrast, the liquidated damages provision under state law provides for an award only if the failure to pay was willful, and then only at a rate of 25 percent of the wages owed (although it is more generous than its federal counterpart to the extent that it applies to regular and "spread-of-hours" wages as well as overtime). NYLL § 198.

Here, the plaintiffs seek liquidated damages under the FLSA in an amount equal to their requested overtime award. *See* Damages Calculation at 1. They do not, however, seek an additional award for liquidated damages under the NYLL, *see id.*, even though they requested such

---

[4]   While an award of liquidated damages is the norm, the FLSA provides that a court, in its discretion, may deny liquidated damages if the employer "shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith[.]" 29 U.S.C. § 260. It is the employer's burden to establish such good faith by "plain and substantial evidence." *Reich*, 121 F.3d at 71 (internal citations omitted). Where, as here, a defendant employer has defaulted, the court plainly cannot find that it has made the showing of good faith necessary to defeat an award of liquidated damages.

relief in the Complaint and they argue in their memorandum of law that they are entitled to it. *See* Memo. at 9-11. Because the plaintiffs have failed to include a calculation of liquidated damages under the NYLL in their request for relief, I recommend against awarding such damages.

Even if the plaintiffs had included a request for NYLL liquidated damages in their damages calculation, I would recommend against such an award because the plaintiffs have not established that the defendants acted willfully. Willfulness is irrelevant to a finding of liability; it becomes pertinent only in calculating damages. As a result, the plaintiffs cannot rely on the defendants' default to establish the willfulness they plead in the Complaint, but must instead provide proof. The plaintiffs have not done so: their allegations of willfulness are wholly conclusory. *See* Memo. at 10-11. While the plaintiffs should not be penalized for failing to present information that the defendants' default has made unavailable to them, they could have provided additional information about their experiences with the defendants that would have assisted the court in determining if there is a sufficient basis for finding that their employers "knew or showed reckless disregard for the matter of whether [their] conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (emphasis removed); *see also Harold Levinson Assocs.*, *v. Chao*, 37 Fed. Appx. 19, 22 (2d Cir. 2002) (quoting *Herman*, 172 F.3d at 141). Because Huerta and Gonzaga have provided no such information, they are not entitled to a finding of willfulness notwithstanding the defendants' default. *See Said v. SBS Electronics, Inc.*, 2010 WL 1265186, at *8-9 (E.D.N.Y. Feb. 24, 2010); *but see, e.g., Dong v. Mei Zhen Liu*, 2009 WL 884680, at *4 (S.D.N.Y. Feb. 19, 2009) (observing that the complaint alleged that the defendants "willfully and intentionally" disregarded their obligations to pay the plaintiffs their wages and finding that "the defendants defaulted and therefore plaintiffs are entitled to (a) a finding that the defendants'

conduct was willful, and (b) an award of the additional damages provided by statute.") (citing *Boyke v. Superior Credit Corp.*, 2006 WL 3833544 (N.D.N.Y. Dec. 28, 2006)).

In short, the plaintiffs are entitled to liquidated damages under the FLSA in an amount equal to the unpaid overtime wages, but they are not entitled to any additional amount of liquidated damages under state law. I therefore recommend an award of liquidated damages under the FLSA only, in the amounts of $6,483.57 for Huerta and $7,668.97 for Gonzaga.

### 4. Prejudgment Interest

New York law provides for an award of prejudgment interest in the circumstances of this case. *See* N.Y. C.P.L.R. § 5001. Awarding prejudgment interest does not overlap with the purposes of liquidated damages, as the former is designed to "compensate a plaintiff for the loss of use of money" while awaiting judgment. *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999) (citing *Chandler v. Bombardier Capital Inc.*, 44 F.3d 80, 83 (2d Cir. 1994)). Moreover, the plaintiffs "may recover [NYLL] prejudgment interest on overtime wages that were awarded under both the FLSA and New York State law[.]" *Cesario*, 2008 WL 5210209, at *6 (S.D.N.Y. Dec. 15, 2008) (collecting cases). I therefore conclude it would be appropriate to award prejudgment interest here.

The statutory rate of interest is nine percent per year. N.Y. C.P.L.R. § 5004. The plaintiffs propose to calculate such interest as of the dates they began their employment at the Bakery. Memo. at 12. I conclude that doing so is inconsistent with the law. Under the relevant statutory provision, "[w]here … damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). A court has discretion to choose a reasonable accrual

date. *Koylum, Inc. v. Peksen Realty Corp.*, 357 F.Supp.2d 593, 597 (E.D.N.Y. 2005). The median date between the earliest ascertainable date the cause of action existed and the date the action was filed is the one most commonly used. *See, e.g.*, *id.*; *Chun Jie Yin*, 2008 WL 906736, at *8; *Pavia v. Around The Clock Grocery, Inc.*, 2005 WL 4655383, at *8 (E.D.N.Y. Nov. 15, 2005). Because the damages here accrued at an essentially regular rate over the entire period of each plaintiff's employment, and because the interest rate is simple rather than compounded, such methodology is appropriate, and produces a result virtually identical to a laborious calculation of interest owed on each week's unpaid wages.

Based on my conclusions as to the period of each plaintiff's employment, I calculate that the midpoint of Huerta's tenure was on February 20, 2010, and that for Gonzaga the corresponding date was March 4, 2010. Applying a nine percent annual interest rate to principal amounts of $7,586.61 and $9,416.22 (the sum of the overtime and spread-of-hours awards described above for Huerta ($6,483.57 + $1,103.04) and Gonzaga ($7,668.97 + $1,747.25), respectively), for the period from the applicable midway points through March 6, 2010 (the earliest likely date of the court's order on the instant motion after receiving timely objections to this Report and Recommendation), I calculate interest as follows:

Huerta: $7,586.61 x 0.09 (yearly interest) x $2 \ ^{15}/_{366}$ years[5] = $1,393.57

Gonzaga: $9,416.22 x 0.09 (yearly interest) x $2 \ ^{2}/_{366}$ years = $1,699.55

I therefore respectfully recommend that the court award Huerta prejudgment interest in the amount of $1,393.57, and that it award Gonzaga prejudgment interest in the amount of $1,699.55. I recommend against allowing prejudgment interest to accrue beyond the date the court enters an order on the instant motion after considering any timely objections. Any delay after that will be

---

[5] The third year of the interest period is a leap year that has 366 days.

attributable solely to the plaintiffs' failure to take the steps needed to vindicate their rights; I therefore conclude it would be unjust to make the defendants subsidize the plaintiffs' failure to file a sufficient complaint on their first two attempts.

5.     Attorneys' Fees And Costs

Huerta and Gonzaga seek an award of attorneys' fees and costs in the amount of $19,531.17. Damages Calculation at 1. Fee shifting is authorized under both federal and state law. *See* 29 U.S.C. § 216(b); NYLL § 663(1). As explained below, I recommend a substantially lower fee award than the plaintiffs request.

The plaintiffs' attorneys have provided detailed records of their fees and costs. *See* DE 17-2 ("Statement of Hours"). I note, however, that those records do not support the plaintiffs' claim for the full amount of $19,531.17; instead, they detail billing amounts totaling only $16,114.24. The higher figure is the one the plaintiffs originally sought in an earlier submission filed prior to the inquest. *See* DE 7-3 Ex. K. at 4. In light of the questions I raised about the latter submission at the inquest, and the plaintiffs' request for an opportunity to revise their fee request in response to the concerns I raised, *see* Tr. at 19-23, I assume the use of the higher number is an oversight and will analyze the fee request based on the most recent submission of billing records.

When fixing a reasonable rate for attorneys' fees, courts should consider "the rate a paying client would be willing to pay," *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008), and apply the prevailing market rates for attorneys of similar expertise providing comparable services. *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998). The fee is then calculated by setting a reasonable hourly rate, and multiplying that rate by the number of hours reasonably expended litigating the case. *Joe Hand Promotions, Inc. v.*

*Martinez*, 2008 WL 4619855, at *7 (S.D.N.Y. Oct. 17, 2008); *see Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008). A fee applicant bears the burden of demonstrating the hours expended and the nature of the work performed, preferably through contemporaneous time records that describe with specificity the nature of the work done, the hours expended, and the dates. *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147-48 (2d Cir. 1983). Inadequate documentation is grounds for reduction of a fee award. *Hensley v. Eckhart,* 461 U.S. 424, 433 (1983); *Levy v. Powell,* 2005 WL 171992, at *6 (E.D.N.Y. Jul. 22, 2005). District courts have broad discretion, using "their experience with the case, as well as their experience with the practice of law, to assess the reasonableness" of each component of a fee award. *Fox Indus., Inc. v. Gurovich,* 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank,* 960 F.2d 1146, 1153 (2d Cir. 1992)).

a.    <u>Hourly Rates</u>

The plaintiffs seek to have the 13 attorneys and paralegal assistants who worked on this case reimbursed on the basis of hourly rates ranging from $75 to $290. *See* Statement of Hours at 5-6. The plaintiffs have not, however, provided to the court any information to justify compensating these individuals at their requested rates, such as an affirmation describing each individual's qualifications and the extent of his or her experience in the legal profession.

I take judicial notice of the fact that, according to records of the New York State Unified Court System that are available to the public on its Internet web site, four of the listed individuals – Richard Epstein ("Epstein"), Myriam Elamraoui ("Elamraoui"), Leonor Coyle ("Coyle"), and LaDonna Lusher ("Lusher") – are attorneys who have been admitted to practice in New York since, respectively, 2011, 2010, 2007, and 2004. *See generally* Attorney Directory-Attorney

Details, http://iapps.courts.state.ny/attorney. Based on that information, I conclude that the requested hourly rate of $125 for Elamraoui and Epstein is reasonable and should be awarded. The requested hourly rates of $210 for Coyle and $250 for Lusher, however, are not sufficiently supported by the available information. While the fact that Lusher was admitted in 2004 might justify an increased rate based on the nature of her experience, in the absence of further information regarding her qualifications, I conclude that an hourly rate of $200 is appropriate. *See Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 207 (E.D.N.Y. 2007) (collecting cases and finding that in this district, hourly rates range from $200 to $375 for partners, $200 to $250 for senior associates, and $100 to $150 for junior associates). The fact that Coyle has been admitted in since 2007 does not by itself warrant a rate above $125. I therefore recommend awarding fees at an hourly rate of $125 for Epstein, Elamraoui, and Coyle; and at an hourly rate of $200 for Lusher.

I take further judicial notice of the fact that Lloyd Ambinder ("Ambinder") has been admitted to practice in the State of New York since 1990. *See* Attorney Directory-Attorney Details, https://iapps.courts.state.ny.us/attorney/AttorneyDetails?attorneyId=5461003. The requested hourly rate of $290 for Ambinder appears reasonable, and is within the range of rates that has been approved for partners with his level of experience. *See Cho*, 524 F. Supp. 2d at 207; *King v. STL Consulting, LLC*, 2006 WL 3335115, at *7 (E.D.N.Y. Oct. 3, 2006).[6]

Likewise, the hourly rate of $75 for eight persons whom I assume to be legal assistants, is within the usual range for this district and should be awarded. *See In re Trs. of the Bldg. Trades Annuity Fund*, 2010 WL 6230530, at *8 (E.D.N.Y. Nov. 17, 2010) (finding a rate of $70 to $80 to

---

[6] Lusher has declared that "all of the legal services reflect[ed] in [the Statement of Hours] were either performed by [her] or by paralegals and accountants under [her] supervision." DE 11 ¶ 16. That statement appears to preclude the possibility that attorneys Ambinder, Epstein, Elamraoui, or Coyle performed any compensable work in this case. In the absence of further information, I assume that the quoted portion of Lusher's declaration is false rather than that the other attorneys are seeking reimbursement for work they did not do.

be customary for paralegals in this district) (citing *Cho,* 524 F. Supp. 2d at 207). However, the requested hourly rate of $125 for Maria Tokarz, who does not appear to be an admitted attorney and about whom the plaintiffs have provided no information, is unsupported by the record and should therefore be reduced to the $75 rate applicable to the other non-attorneys who worked on the case.

    b. <u>Hours Expended</u>

  The plaintiffs seek reimbursement for a total of 85.48 hours of time expended by their attorneys and paralegal assistants. Statement of Hours at 5. That amount of time for a case in which the defendants defaulted is extraordinary, particularly in light of the fact that this is one of many similar cases that the plaintiffs' firm has litigated in this court, and benefitted from significant time savings as a result.

  One source of the inflated hours appears to be work related to plaintiffs' counsel's initial attempts to assert wage and hour claims as a collective action on behalf of other individuals employed by the defendants. For example, the Statement of Hours reflects that on August 9, 2010, Coyle billed .2 hours for a conversation with Huerta regarding "potential class members he's been able to contact." Statement of Hours at 1. The same day, Coyle billed an additional .2 hours for speaking with Ambinder regarding "[Huerta]'s efforts to find potential class members." *Id.* Similarly, on October 14, 2010, Coyle billed .2 hours for a conversation with Lusher about "talking to clients [about] additional plaintiffs." *Id.*

  Given that the plaintiffs have prosecuted claims only on behalf of themselves, and have abandoned pursuit of collective and class action claims, it is inappropriate to require the defendants, by virtue of their default, to bear the cost of counsel's unsuccessful efforts to recruit

additional clients to sue them. Indeed, I discussed this precise issue with the plaintiffs' counsel at the inquest, and counsel agreed to review the time records and submit a revised request for attorney's fees. *See* Tr. 21-24. Although the revised request contains fewer entries for such recruitment efforts, several still remain – but the plaintiffs have made no effort to explain why any of them are appropriate. *Compare* DE 7-3 Ex. K *with* Statement of Hours; *see* Memo. at 12-14 (argument as to fee request).

Another source of inflation is the hours expended by the plaintiffs' attorneys and their legal assistants after the damages inquest on October 18, 2011. As the relevant entries in the Statement of Hours make clear, the majority of the 7.6 hours of work expended during this period was spent essentially correcting defects I pointed out to them at the inquest. For example, counsel spent 3.5 hours revising the plaintiffs' fee application. *See* Statement of Hours at 4-5. That task was required only because the original application included requests for hourly rates the plaintiffs' counsel had reason to believe would be rejected (including, for example $495 for Ambinder and $385 for Lusher), *see* Tr. at 20-21,[7] and billed for a significant amount of work related solely to the potential class action. *See* DE 7-3 Ex. K; Tr. at 19-24. Likewise, counsel spent over 1.5 hours performing legal research and drafting an amended complaint to cure (unsuccessfully, in my view) the defects in the pleading on which they sought a default judgment. *See* Statement of Hours at 4-5.

---

[7] As far as I can determine, the attorneys at the firm representing the plaintiffs here regularly seek compensation at much lower hourly rates, and in this district have never sought, much less obtained, approval for the rates they initially claimed here. *See*, *e.g.*, *Maher v. Alliance Mortg. Banking Corp.*, 2010 WL 3516153, at *4 (E.D.N.Y. Aug. 9, 2010) ($245 hourly rate for Lusher); *Trs. of Plumbers Local Union No.1 Welfare Fund v. N.Y. Pipeline Mech. Contractors, LLC*, 2010 WL 1221430, at *6 (E.D.N.Y. Mar. 23, 2010) ($250 for a partner and $200 for an associate); *Masino v. Cityline Concrete Corp.*, 2009 WL 1033392, at *5 (E.D.N.Y. Apr. 16, 2009) ($175); *Trs. of Plumbers and Pipefitters Nat. Pension Fund v. Danel Weintraub & Assocs., Inc.*, 2007 WL 4125453, at *5 (E.D.N.Y. Nov. 16, 2007) ($200 to $210 for firm members and $150 to $160 for associates); *see also Said*, 2010 WL 1265186, at *10 (rejecting rates of $350 for a  different firm's partner and $250 for a third-year associate in FLSA case, and instead awarding respective rates of $250 and $125).

No paying client would be willing to subsidize such inefficiency, and the court should not require the defendants to do so either. For the same reason, I recommend against any fee award for legal fees incurred in connection with further proceedings in this case (aside from any successful litigation of objections to this Report and Recommendation), should the plaintiffs seek to file an Amended Complaint that cures the pleading defects described above.

One acceptable method for "trimming the fat" from a fee application, and one that consumes fewer judicial resources than a painstaking review of each time-entry, is for the court to impose an "across-the-board percentage" cut of the amount of time claimed. *In re "Agent Orange" Products Liab. Litig.*, 818 F.2d 226, 237-38 (2d Cir.1987). I recommend a reduction of 20 percent of the hours billed for work done prior to the inquest, and 80 percent of the hours billed for work performed after the inquest by attorneys Lusher and Coyle (as well another person named Isabel Gardocki ("Gardocki"), about whom the plaintiffs have provided no information), the latter reduction reflecting my rough estimate of the amount of post-inquest work devoted to remedying defects in the plaintiffs' earlier submissions. Specifically, I propose reducing Ambinder's hours from 4.8 to 3.84, Lusher's from 25.6 to 18.26, Coyle's from 25.6 to 19.4, Elamraoui's hours from .6 to .48, Epstein's hours from .8 to .64, Gardocki's from 3.32 to .74, and the hours of the remaining legal assistants from 28.08 to 22.46.

c.      Total Fee Reimbursement

Based on the recommendations set forth above, I conclude that the plaintiffs are entitled to a total of $9,070.60 in attorneys' fees: $1,113.60 for the Ambinder's work (3.84 hours at an hourly rate of $290); $3,652.00 for Lusher's (18.26 hours at an hourly rate of $200); $2565.00 for the work of Coyle, Elamraoui, and Epstein (20.52 hours at $125); and $1,740.00 for the work of legal

assistants (23.2 hours at an hourly rate of $75). For purposes of reducing the award to a judgment, I recommend allotting half of that amount to Huerta and half to Gonzaga, resulting in a fee award to each plaintiff of $4,535.30

d.     <u>Total Litigation Costs</u>

The plaintiffs seek reimbursement of a total of $637.49 in costs, including $350 for filing the complaint and $287.49 in service of process fees and postage. These costs are reasonable and I recommend that they be awarded to the plaintiffs in equal shares, or $318.75 each. Adding that amount to the fee award results in a total award of costs and fees to each plaintiff of $4,854.05.

III.    <u>Recommendation</u>

For the reasons set forth above, I respectfully recommend that the court deny the motion because the plaintiffs have failed to establish the defendants' liability on their federal claims, and that it instead dismiss the Complaint *sua sponte* with leave to amend. I further recommend, however, that if plaintiffs timely file an amended complaint that cures the pleading deficiencies I have identified, and if the defendants again default in this action, then the court should enter judgment against the defendants jointly and severally in the total amount of $43,956.59. That total consists of an award to Huerta of $20,317.80 (including $6,483.57 in unpaid overtime wages; $1,103.04 in spread-of-hours compensation; $6,483.57 in liquidated damages; $1,393.57 in prejudgment interest; and $4,854.05 in attorney's fees and costs) and an award to Gonzaga of $23,638.79 (including $7,668.97 in unpaid overtime wages; $1,747.25 in spread-of-hours compensation, $7,668.97 in liquidated damages; $1,699.55 in prejudgment interest; and $4,854.05 in attorney's fees and costs).

IV.     Objections

I direct the plaintiffs to serve a copy of this Report and Recommendation on each defendant by certified mail, and to file proof of service no later than February 21, 2012. Any objections to this Report and Recommendation must be filed no later than March 6, 2012. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

SO ORDERED.

Dated:  Brooklyn, New York
        February 17, 2012

_____/s/_____
JAMES ORENSTEIN
U.S. Magistrate Judge